Brian Knutsen, OSB # 112266
Emma Bruden, OSB # 163525
KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Avenue, Suite 217
Portland, Oregon 97214
Telephone: (503) 841-6515 (Knutsen)
              (503) 719-5641 (Bruden)
Email: brian@kampmeierknutsen.com
        emma@kampmeierknutsen.com

Jonah Sandford, OSB # 154711
NORTHWEST ENVIRONMENTAL DEFENSE CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
Telephone: (503) 768-6726
Email: jonah@nedc.org

*Attorneys for Plaintiff Northwest Environmental Defense Center*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **NORTHWEST ENVIRONMENTAL DEFENSE CENTER**, an Oregon non-profit corporation,<br><br>        Plaintiff,<br><br>        v.<br><br>**KINDER MORGAN BULK TERMINALS, LLC**, a foreign corporation,<br><br>        Defendant. | Case No. 3:20-cv-00706<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES**<br><br>**(Pursuant to Clean Water Act, 33 U.S.C. § 1365(a)(1))** |

# I.    INTRODUCTION.

1.    This action is a citizen suit alleging violations of the Clean Water Act ("CWA" or "Act"), as amended, 33 U.S.C. §§ 1251 *et seq*. Defendant Kinder Morgan Bulk Terminals, LLC ("Kinder Morgan" or "Defendant") leases and operates an industrial facility—a bulk materials storage and transfer site—on the east bank of the Willamette River in Portland, Oregon. Kinder Morgan has a National Pollutant Discharge Elimination System ("NPDES") permit that authorizes discharges of pollutants and stormwater associated with industrial activity from Defendant's facility to waters of the United States, provided Kinder Morgan and the discharges comply with the terms and conditions of the permit. Plaintiff Northwest Environmental Defense Center ("NEDC") alleges Defendant is regularly violating the terms and conditions of its NPDES permit. NEDC seeks declaratory and injunctive relief, the imposition of civil penalties, an award of costs, attorneys' fees, and expert witness fees, and other relief for Defendant's repeated and ongoing violations of its NPDES permit and the Clean Water Act.

# II.    JURISDICTION AND VENUE.

2.    This Court has jurisdiction pursuant to 33 U.S.C. § 1365 (CWA citizen suit provision) and 28 U.S.C. § 1331 (federal question). Kinder Morgan is in violation of an "effluent standard or limitation" as defined by Section 505 of the Act, 33 U.S.C. § 1365. The relief requested herein is proper under 28 U.S.C. §§ 2201 and 2202, and 33 U.S.C. §§ 1319(d) and 1365.

3.    NEDC has satisfied the jurisdictional requirements for bringing this suit. In accordance with Section 505(b)(1)(A) of the Act, 33 U.S.C. § 1365(b)(1)(A), by certified letter dated and postmarked February 12, 2020, NEDC notified Kinder Morgan and its registered agent of Defendant's alleged violations of its NPDES permit and the CWA and of NEDC's intent to

sue for those violations ("Notice Letter"). NEDC also notified the Administrator of the U.S. Environmental Protection Agency ("EPA"), the Administrator of EPA Region 10, and the Director of the Oregon Department of Environmental Quality ("ODEQ") of NEDC's intent to sue Defendant by mailing a copy of the Notice Letter to those officials on February 12, 2020. A copy of the Notice Letter is attached to this Complaint as Exhibit 1 and the allegations therein are hereby incorporated by reference.

4.      More than sixty days have passed since NEDC mailed the Notice Letter and the violations complained of are continuing or reasonably likely to continue to occur. Neither EPA nor ODEQ has commenced any action constituting diligent prosecution to redress the violations alleged in the Notice Letter. Defendant is in ongoing violation of the Clean Water Act.

5.      Venue is appropriate in this District under Section 505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because the source of the violations complained of is located in this District, in Multnomah County, Oregon.

6.      A copy of this Complaint will be served on the Attorney General of the United States, the Administrator of the EPA, and the Administrator of EPA Region 10, as required by 33 U.S.C. § 1365(c)(3) and 40 C.F.R. § 135.4.

### III.     PARTIES.

7.      Plaintiff Northwest Environmental Defense Center is a membership organization suing on behalf of itself and its members. NEDC is an independent non-profit corporation organized and existing under the laws of the State of Oregon. NEDC maintains its principal place of business in Multnomah County, Oregon. Since 1969, the staff, student volunteers, and members of NEDC have advocated for cleaner water and air and for the preservation of public lands and wildlife habitat across the Pacific Northwest.

8.      The mission of NEDC is to protect and conserve the environment and natural resources of the Pacific Northwest. NEDC and its members work to conserve and protect water resources and aquatic species of the Pacific Northwest. NEDC and its members have a particular interest in, and derive aesthetic, recreational, and other benefits from, Oregon's rivers, streams, lakes, and bays, including the Willamette River and the Columbia River, as well as the aquatic species that use and rely on those waters. NEDC's members use and enjoy the Willamette River and the Columbia River, including waters and adjacent lands downstream from Defendant's discharges of pollutants, for recreational and other activities, including boating, fishing, nature watching, hiking, biking, aesthetic enjoyment, and other activities. Additionally, many members of NEDC live or work near the Willamette River or the Columbia River or otherwise have an interest in the Willamette and Columbia rivers and the aquatic species that inhabit or use those waters. NEDC and its members intend to continue all of these activities in the future.

9.      NEDC has standing to bring this lawsuit. NEDC and its members are "citizens" as defined by Section 505(g) of the Act, 33 U.S.C. § 1365(g). NEDC has at least one member who is injured by Defendant's discharges of pollutants and polluted stormwater and its failure to comply with its NPDES permit and the CWA. Recreational, economic, aesthetic, conservation, health, and other interests of NEDC and its members have been, are being, and will be adversely affected by Defendant's violations of the CWA and unauthorized discharges of pollutants and/or industrial stormwater to the Willamette River. NEDC's and its members' interests in the Willamette River and waters downstream of it are diminished by their polluted state, by Defendant's illegal discharges of pollutants and industrial stormwater, and by Defendant's other violations of the CWA. These injuries are fairly traceable to the conduct challenged herein. The relief sought in this lawsuit can redress the injuries to NEDC and NEDC's members' interests.

COMPLAINT – 4

10.     Defendant Kinder Morgan is a corporation organized and existing under the laws of the State of Louisiana and is authorized to conduct business in Oregon. Defendant leases and operates an industrial facility at or near 11040 North Lombard Street, Terminal 4, Portland, Oregon 97203 (hereinafter "the Facility"). Defendant's Facility is on land adjacent to the Willamette River. Defendant's Facility discharges pollutants and stormwater associated with industrial activity via point sources to the Willamette River.

## IV.    LEGAL BACKGROUND.

11.     Congress enacted the Clean Water Act to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).

12.     As relevant here, Section 301(a) of the Act, 33 U.S.C. § 1311(a), prohibits "the discharge of any pollutant by any person" unless such discharge is authorized by an NPDES permit issued pursuant to Section 402 of the Act, 33 U.S.C. § 1342.

13.     The Act defines the term "discharge of a pollutant" to mean, in part, "any addition of any pollutant to navigable waters from any point source . . . ." 33 U.S.C. § 1362(12).

14.     The Act defines the term "point source" to mean, in part, "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged. * * *." 33 U.S.C. § 1362(14).

15.     The Act defines the term "pollutant" to mean, in part, "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water. * * *." 33 U.S.C. § 1362(6).

16.     Although neither the Act nor its implementing regulations define the term "addition," courts have found that "addition" means the introduction of a pollutant into navigable waters from any place outside the particular water body. *See, e.g.*, *Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York*, 273 F.3d 481, 491 (2d Cir. 2001).

17.     The Act's prohibition on discharging pollutants from point sources applies broadly. The Act defines the term "navigable waters" to mean "the waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7). And the Act defines the term "person" to mean "an individual, corporation, partnership, association, State, municipality, commission, or political subdivision of a State, or any interstate body." *Id.* § 1362(5).

18.     The Act regulates and requires an NPDES permit for stormwater discharges "associated with industrial activity." 33 U.S.C. § 1342(p)(2)(B), (p)(3)(A). EPA regulations define the term "stormwater discharge associated with industrial activity" in part to mean "the discharge from any conveyance that is used for collecting and conveying storm water and that is directly related to manufacturing, processing or raw materials storage areas at an industrial plant." 40 C.F.R. § 122.26(b)(14).

19.     Federal and state regulations require any person who discharges or proposes to discharge pollutants or stormwater associated with industrial activity to waters of the United States to apply for an NPDES permit. 40 C.F.R. § 122.21(a); Or. Admin. R. 340-045-0015(2) & 5. Section 402(a) of the Act empowers EPA or an authorized state to issue NPDES permits authorizing discharges of pollutants or stormwater associated with industrial activity. 33 U.S.C. § 1342(a). EPA may delegate administration of the NPDES permit program to states with regulatory programs meeting applicable criteria. *Id.* § 1342(b); 40 C.F.R. Part 123.

20.     Compliance with the terms and conditions of an NPDES permit is deemed compliance with the general discharge prohibition in Section 301(a) of the Act. 33 U.S.C. § 1342(k). Any permit noncompliance is grounds for a citizen enforcement action. *Id.* § 1365(a)(1), (f)(7).

## V.     FACTS.

### A.     Oregon's General NPDES Stormwater Discharge Permit Number 1200-Z and Defendant's NPDES Permit Coverage.

21.     The State of Oregon implements a federally approved NPDES Permit program administered by ODEQ. *See* Oregon Administrative Rules ("OAR") Ch. 340-045. ODEQ issues general and individual NPDES permits authorizing discharges of pollutants in the State of Oregon. A person seeking coverage under one of ODEQ's general permits must submit certain application materials to ODEQ, which then assigns NPDES permit coverage to the discharger if appropriate.

22.     ODEQ periodically issues a General NPDES Stormwater Discharge Permit Number 1200-Z ("1200-Z Permit") authorizing discharges of stormwater associated with industrial activity in Oregon. For facilities that obtain coverage under it, the 1200-Z Permit authorizes discharges of stormwater associated with industrial activity to waters of the United States, provided the permittee and discharges are in compliance with the terms and conditions of the permit.

23.     To reduce and eliminate pollutant concentrations in stormwater discharges, the 1200-Z Permit requires permittees to, among things, develop and implement a Stormwater Pollution Control Plan ("SWPCP"); to monitor and report pollutant loadings in stormwater discharged from the facility; and, in certain circumstances, to revise the SWPCP and implement more comprehensive stormwater management practices over time to protect water quality.

24.     ODEQ issued one iteration of the 1200-Z Permit on October 1, 2011, with an effective date of July 1, 2012 (hereinafter "2012 Permit"). For facilities granted coverage under it,

the 2012 Permit conditionally authorized stormwater discharges associated with industrial activity from July 1, 2012 to June 30, 2017. The specific terms and conditions of the 2012 Permit at issue in this case are described below and in the Notice Letter. *See* Ex. 1.

25.     ODEQ issued the most recent iteration of the 1200-Z Permit on August 1, 2017 (hereinafter "2017 Permit"). This permit was subsequently reissued upon reconsideration by letter dated October 23, 2018. For facilities granted coverage under it, the 2017 Permit conditionally authorized stormwater discharges associated with industrial activity, as well as some non-stormwater discharges of pollutants, from August 1, 2017 to July 31, 2022. The specific terms and conditions of the 2017 Permit at issue in this case are described in detail below and in the Notice Letter. *See* Ex. 1.

26.     Defendant's Facility discharges pollutants and stormwater associated with industrial activity via discernible, confined, and discrete conveyances to the Willamette River.

27.     ODEQ authorized Kinder Morgan to discharge stormwater associated with industrial activity from its Facility from July 1, 2012 to June 30, 2017 by issuing Kinder Morgan coverage under the 2012 Permit. ODEQ assigned Defendant file and permit number 100025. Additionally, ODEQ authorized Kinder Morgan to discharge stormwater associated with industrial activity, as well as some non-stormwater discharges of pollutants, from its Facility from August 1, 2017 to July 31, 2022 by issuing Kinder Morgan coverage under the 2017 Permit under the same file number.

28.     Kinder Morgan's 2012 Permit and 2017 Permit (together "the Permits") require Kinder Morgan to monitor stormwater discharges from the Facility. The stormwater monitoring data described in Tables 1, 2, and 3 that are attached to the Notice Letter as Appendix A accurately reflect stormwater monitoring results that Kinder Morgan submitted to ODEQ.

29.     Kinder Morgan's Permits prohibit any direct or indirect discharge to waters of the state that is not in compliance with the terms and conditions of the Permits. Kinder Morgan's Permits also clearly state: "Any permit noncompliance constitutes a violation of . . . the Clean Water Act . . . and is grounds for enforcement action."

**B.     Kinder Morgan Has Violated and Is Violating Its 2012 and 2017 Permits.**

30.     Kinder Morgan is discharging pollutants and stormwater associated with industrial activity from its Facility to the Willamette River and Columbia River in violation of the terms and conditions in the 2017 Permit. Kinder Morgan also violated similar terms and conditions in the 2012 Permit. Kinder Morgan's violations of the Permits are set forth in Section II of the Notice Letter and are hereby incorporated into this Complaint by reference. Kinder Morgan's violations of the Permits constitute violations of an "effluent standard or limitation" under the CWA. 33 U.S.C. § 1365(a), (f)(7).

**1.     Kinder Morgan Violated Its Permits by Failing to Comply with the Permits' Narrative, Technology-Based Effluent Limitations and the Control Measures Required to Meet Those Effluent Limitations.**

31.     Schedules A.1 of the Permits require Kinder Morgan to implement the listed narrative, technology-based effluent limits—a variety of best management practices listed in the Permits—to reduce pollutants in stormwater discharged from the Facility. Additionally, Schedule A.3.a of the 2017 Permit requires Kinder Morgan "to select, design, install, implement and maintain control measures . . . to meet the narrative and numeric technology based effluent limits in Schedule A.1, A.2 and Schedule E of this permit and [to] describe these measures in the SWPCP." Schedule A.3.b of the 2017 Permit requires Kinder Morgan to "reduce or eliminate pollutants to the extent achievable using control measures that are technologically available and economically practicable and achievable in light of best industry practice." Schedules A.1, A.3.a,

and A.3.b in the 2012 Permit imposed the same or substantially similar obligations on Kinder Morgan.

32.    Kinder Morgan violated and continues to violate Schedules A.1, A.3.a, and A.3.b of the Permits by failing to meet the narrative technology-based effluent limits in Schedule A.1 of the Permits; by failing to select, design, install, implement, and maintain control measures to ensure compliance with the technology-based effluent limits in Schedules A.1 and Schedules E of the Permits; and by failing to reduce or eliminate pollutants to the extent achievable using control measures that are technologically available, economically practicable, and achievable in light of best industry practice.

33.    Several specific instances of Kinder Morgan's violations of Schedules A.1, A.3.a, and A.3.b of the Permits have been documented by Portland Bureau of Environmental Services ("BES") staff during Facility inspections. Kinder Morgan violated Schedules A.1, A.3.a, and A.3.b of the 2017 Permit on January 11, 2019 by allowing debris accumulation near catch basin L-18 at the Facility. Kinder Morgan violated Schedules A.1, A.3.a, and A.3.b of the 2017 Permit on January 11, 2019 by failing to implement adequate site controls at the Facility to stabilize soils in exposed areas where industrial activity has taken place in the past. Kinder Morgan violated Schedules A.1, A.3.a, and A.3.b of the 2017 Permit on January 22, 2020 because filters in some catch basins at the Facility were missing or damaged. These and other documented violations are described in Section II.A.1 of the Notice Letter and are incorporated herein by this reference.

34.    Kinder Morgan's violations of Schedules A.1, A.3.a, and A.3.b of the Permits are also demonstrated by the fact that Defendant's stormwater discharges regularly exceed the Per-

mits' numeric benchmarks for several pollutants. Schedules A.9 of the Permits explain that pollutant benchmarks in the Permits "are designed to assist the permit registrant in determining whether its site controls are effectively reducing pollutant concentrations in stormwater discharged from the site." Schedules A.9 and B.1.a of the 2017 Permit then require Kinder Morgan to monitor stormwater discharges from the Facility to determine whether the discharges exceed any of the following *statewide benchmarks*: total copper, 0.020 mg/L; total lead, 0.040 mg/L; total zinc, 0.12 mg/L; pH, 5.5 – 9.0 S.U.; total suspended solids, 30 mg/L; and total oil and grease, 10 mg/L. Schedules A.9 and B.1.a of the 2012 Permit imposed the same or substantially similar obligations except that the benchmark for total suspended solids in the 2012 Permit was 100 mg/L. Additionally, Schedules E.Q.4 and B.1.a of the Permits require Kinder Morgan to monitor stormwater discharges from the Facility to determine whether the discharges exceed any of the following *sector-specific benchmarks*: Total Aluminum, 0.75 mg/L; and Total Iron, 1.0 mg/L. And Schedule B.1.b of the 2017 Permit and ODEQ's permit assignment letters to Kinder Morgan require Kinder Morgan to monitor stormwater discharges from the Facility to determine whether the discharges exceed, among others, any of the following *impairment pollutant benchmarks*: Dissolved Copper, 0.012 mg/L; Total Iron, 1.0 mg/L; Benzo(a)anthracene, 0.001 mg/L; Benzo(a)pyrene, 0.001 mg/L; Benzo(b)fluoranthene 3,4, 0.001 mg/L; Benzo(k)fluoranthene, 0.001 mg/L; Chrysene, 0.001 mg/L; Dibenz(a,h)anthracene, 0.001 mg/L; and Indeno(1,2,3-cd)pyrene, 0.001 mg/L. Schedule B.1.b of the 2012 Permit and ODEQ's permit assignment letters imposed the same or substantially similar obligations except that they did not require Kinder Morgan to monitor for dissolved copper.

35.    As indicated in Tables 1, 2, and 3 that are attached to the Notice Letter as Appendix A—where sample results in bold text indicate that a sample exceeded a pollutant benchmark

or reference concentration—stormwater discharges from the Facility have repeatedly exceeded the statewide, sector-specific, and impairment pollutant benchmarks in the Permits and the Facility's permit assignment letters. The history and pattern of stormwater sample results exceeding a statewide benchmark, sector-specific benchmark, or reference concentration for an impairment pollutant for the Facility demonstrate that Kinder Morgan has regularly failed to comply with the narrative technology-based effluent limits in Schedules A.1 and E of the Permits, and failed to select, design, install, implement, and maintain control measures necessary to meet those limits, in violation of Schedules A.3.a and A.3.b in the Permits. Additionally, this history and pattern of pollutant benchmark exceedances demonstrate that Kinder Morgan's Facility's site controls are not effectively eliminating or minimizing pollutants in stormwater discharged from the Facility, and are not reducing or eliminating pollutants to the extent achievable, in violation of Schedules A.1, E, A.3.a, and A.3.b in the Permits. These permit requirements and Defendant's violations thereof are described in Section II.A.2 of the Notice Letter and are incorporated herein by reference. These violations have occurred each and every day since March 1, 2015, and are ongoing.

36.    Kinder Morgan also violated and continues to violate Schedules A.1, A.3.a, and A.3.b in the Permits as they relate to Outfall 003 and Outfall 004 at the Facility. Between March 1, 2015 and late 2018, Kinder Morgan did not know about or acknowledge discharges to the Willamette River from Outfalls 003 and 004, and so Kinder Morgan was not making any attempt to comply with Schedules A.1, E, A.3.a, or A.3.b in the Permits regarding those outfalls. Recent benchmark exceedances for Outfall 3, which are documented in Tables 1-3 that are attached to the Notice Letter as Appendix A, demonstrate that even after acknowledging discharges from Outfall 003 and 004 in 2018, Kinder Morgan continued to violate Schedules A.1, E, A.3.a and A.3.b in the Permits for those Outfalls. These permit requirements and Defendant's violations

thereof are described in Section II.A.3 of the Notice Letter and are incorporated herein by reference. These violations have occurred each and every day since March 1, 2015 and are ongoing.

>   **2.   Kinder Morgan Violated Its Permits by Failing to Develop and Implement a SWPCP that Complies with all the Requirements of the Permits.**

37.   Schedules A.3.a of the Permits require Kinder Morgan to describe its pollutant control measures, maintenance schedules, and the frequency of housekeeping measures in its SWPCP. Schedule A.6.c of the 2017 Permit requires Kinder Morgan to include in its SWPCP each narrative technology-based effluent limit to eliminate or reduce the potential to contaminate stormwater and prevent any violation of instream water quality standards. Schedules A.7 of the Permits set forth the requirements for SWPCPs, including in Schedule A.7.b.vi of the 2017 Permit and in Schedule A.7.b.v of the 2012 Permit the requirement that SWPCPs include a description of control measures installed and implemented to meet the technology and water quality based requirements in Schedules A.1–A.5 and any applicable sector-specific requirements in Schedule E. Schedule A.6.c of the 2012 Permit and Schedule A.6.d of the 2017 Permit then require Kinder Morgan to implement the SWPCP and any revisions to it.

38.   Kinder Morgan violated and continues to violate these Permit conditions by failing to maintain and implement an adequate SWPCP at the Facility. The extensive benchmark exceedances documented in Tables 1-3 that are attached to the Notice Letter as Appendix A, the extensive water quality violations and corrective action violations described herein, and ongoing discharges of polluted industrial stormwater from the Facility demonstrate that Kinder Morgan is not maintaining or implementing a SWPCP that includes adequate control measures and all of the required SWPCP components. Defendant violated the Permit conditions described in the first paragraph of Section II.B of the Notice Letter during the periods and in the manners described in the second and third paragraphs of Section II.B of the Notice Letter. Those allegations are hereby

incorporated herein by reference. These violations are ongoing.

39.     In addition, Kinder Morgan violated and continues to violate these permit condi-
tions by maintaining and implementing inadequate SWPCP provisions applicable to Outfalls 003
and 004 at the Facility. Defendant's violations of the permit requirements applicable to Outfalls
003 and 004 are described in the final two paragraphs of Section II.B of the Notice Letter and are
incorporated herein by reference. These violations have occurred each and every day since
March 1, 2015 and are ongoing.

**3.      Kinder Morgan Violated Its Permits by Failing to Comply with the Permits'
Corrective Action Requirements.**

40.     Schedules A.10.a of the Permits require Kinder Morgan to undertake a Tier I cor-
rective action response each time a stormwater monitoring result exceeds any statewide bench-
mark, sector-specific benchmark, or reference concentration for an impairment pollutant. Specif-
ically, that Permit condition requires Kinder Morgan, within 30 calendar days of obtaining moni-
toring results demonstrating a benchmark or reference concentration exceedance, to: (1) investi-
gate the cause of the elevated pollutant levels and develop a plan for controlling significant mate-
rials from previous operations; (2) review the SWPCP and the selection, design, installation and
implementation of control measures to ensure compliance with the permit, including evaluating
whether treatment measures have been properly installed, maintained, and implemented, and
evaluate whether additional removal or modifications to pollutant source isolation are necessary;
(3) revise the SWPCP if necessary and submit the revised SWPCP and a schedule for imple-
menting additional control measures to ODEQ or BES; and (4) write a Tier I report and, if ex-
ceedance of an impairment pollutant benchmark triggered the Tier I corrective response, submit
the Tier I report to ODEQ or BES within sixty days of receiving the monitoring results that trig-
gered the corrective action response.

COMPLAINT – 14

41.     Schedule A.10.b of the 2012 Permit required Kinder Morgan to implement Tier I corrective actions before the next storm event or as soon as practicable. Schedule A.10.b of the 2017 Permit requires Kinder Morgan to implement Tier I corrective actions no later than thirty days after receiving monitoring results showing an exceedance of any applicable statewide benchmark in Schedule A.9 of the Permits, any sector-specific benchmark in Schedule E of the Permits, or any reference concentration for impairment pollutants identified in Kinder Morgan's permit assignment letters. If Kinder Morgan cannot complete corrective actions within those time periods it must explain the reasoning for the delay in a Tier 1 report.

42.     Kinder Morgan violated Schedule A.10.a.iii of the 2012 Permit, and Schedule A.10.a.iv of the 2017 Permit, by preparing and/or submitting inadequate Tier I corrective action reports. These permit conditions require Kinder Morgan to summarize specific information in a "Tier 1 Report," including: (1) the results of its investigation into the cause of elevated pollutant levels; (2) corrective actions taken or to be taken, or, if determined that no corrective action is necessary, the basis for this determination; and (3) documentation of whether SWPCP revisions are necessary. Defendant violated these permit conditions by failing to timely submit Tier I Reports that meet all the above criteria. These violations occurred during the periods and in the manners stated in Section II.C.1 on pages 8 and 9 of the Notice Letter and are hereby incorporated by reference. These violations are ongoing.

43.     Additionally, Kinder Morgan violated Schedule A.10.a.iii of the 2012 Permit, and Schedule A.10.a.iv of the 2017 Permit, by preparing and/or submitting Tier I corrective action reports on multiple dates that fail to identify corrective actions taken or to be taken by the deadlines stated in Schedules A.10.b of the Permits, including the dates corrective actions were completed or expected to be completed, without explaining why Kinder Morgan needed additional

time to complete the corrective action. These violations occurred during the periods and in the manners stated in Section II.C.1 on page 10 of the Notice Letter and are hereby incorporated by reference. These violations are ongoing.

44.    Kinder Morgan violated Schedules A.10.b of the Permits by failing to implement corrective actions in a timely manner, including implementation of modified control measures, even though such corrective actions are necessary to meet the effluent limitations and other conditions in the Permits. As documented in Tables 1-3 that are attached to the Notice Letter as Appendix A, Kinder Morgan regularly discharges in excess of the statewide benchmarks in Schedules A.9 of the Permits, the sector-specific benchmarks in Schedule E of the Permits, and the reference concentrations for impairment pollutants identified in Kinder Morgan's permit assignment letters. Each exceedance triggered Kinder Morgan's obligation to implement corrective actions by the deadlines stated in Schedules A.10.b of the Permits. The repeated exceedances of multiple pollutant benchmarks and reference concentrations demonstrate that Kinder Morgan is not implementing corrective actions in a timely manner as required by the Permits. Additionally, Kinder Morgan has not completed Tier 1 corrective actions within the timeframe required in the 2017 Permit for the exceedances of Benzo(a)anthracene, Benzo(a)pyrene, Benzo(b)fluoranthene, Benzo(k)fluoranthene, Chrysene, Dibenz(a,h)anthracene, and Indeno(1,2,3-cd)pyrene that occurred on October 16, 2019. These requirements and Defendant's violations thereof are described in Section II.C.2 of the Notice Letter and are hereby incorporated by reference. These violations have occurred each and every day since March 14, 2015, and are ongoing.

//


//


COMPLAINT – 16

**4.      Kinder Morgan Violated Its Permits by Failing to Comply with the Permits'
Water Quality Based Effluent Limitations and Related Reporting Require-
ments.**

45.      Schedules A.4.a of the Permits prohibit Kinder Morgan from causing or contrib-

uting to a violation of instream water quality standards established in Oregon Administrative

Rules ("OAR") 340-041. And Schedules F.A6 of the Permits require Kinder Morgan to comply

with any applicable effluent standards or prohibitions established under OAR 340-041-0033 for

toxic pollutants.

46.      OAR 340-041-007(1) states that "the highest and best practicable treatment and/or

control of wastes, activities, and flows must in every case be provided so as to maintain...toxic

materials...at the lowest possible levels." OAR 340-041-0033(1) prohibits the introduction of

toxic substances above natural background levels in concentrations and/or combinations that

may be harmful to public health, safety, aquatic life, and wildlife. And OAR 340-041-0033(2)

states that levels of toxic substances in waters of the state may not exceed the applicable aquatic

life criteria as defined in Table 30 under OAR 340-041-0083. ODEQ established these and other

water quality standards to protect human health and other important beneficial uses such as rec-

reation, drinking water sources, and habitat for salmon and steelhead. Or. Rev. Stat.

§§ 468B0.15, 468B0.48.

47.      The Permits established reference concentrations for impairment pollutants based

on these water quality standards. Kinder Morgan discharges into a water body (the Willamette

River) identified as failing to meet water quality standards for iron, copper, benzo(a)anthrocene,

benzo(a)pyrene, benzo(b)fluoranthene 3,4, benzo(k)fluoranthene, chrysene, dibenz(a,h)anthra-

cene, and indeno(1,2,3- cd)pyrene. Table 30 and Table 40 in OAR 340-041-0083 identify the

concentrations of these toxic pollutants that may be harmful. Table 30 identifies toxic pollutant

criteria for the protection of aquatic life. And Table 40 identifies concentrations of toxic pollu-

tants "derived to protect Oregonians from potential adverse health impacts associated with long-

term exposure to toxic substances associated with consumption of fish, shellfish, and water." In

its permit assignment letters to Kinder Morgan, ODEQ incorporated these aquatic life and human

health criteria into the Permits as reference concentrations for impairment pollutants.

48.     Kinder Morgan violated and continues to violate Schedules A.4.a and F.A6 of the

Permits by discharging pollutants and industrial stormwater from the facility in amounts or man-

ners that cause or contribute to violations of these and other water quality standards. As indicated

in Tables 1-3 that are attached to the Notice Letter as Appendix A, discharges from Kinder Mor-

gan's Facility regularly contain elevated levels of each of the following, toxic impairment pollu-

tants: iron, copper, benzo(a)anthrocene, benzo(a)pyrene, benzo(b)fluoranthene 3,4, benzo(k)fluo-

ranthene, chrysene, dibenz(a,h)anthracene, and indeno(1,2,3- cd)pyrene. Discharges of those pol-

lutants from the Facility violate OAR 340-041-0033(1) because they contribute toxic substances

above natural background levels in concentrations that may be harmful to public health, safety,

aquatic life, and wildlife. With regard to iron and copper, the discharges also violate OAR 340-

041-0033(2) by exceeding the applicable aquatic life criteria for these pollutants. And the dis-

charges of iron, copper, benzo(a)anthrocene, benzo(a)pyrene, benzo(b)fluoranthene 3,4,

benzo(k)fluoranthene, chrysene, dibenz(a,h)anthracene, and indeno(1,2,3- cd)pyrene violate

OAR 340-041-007(1) because Kinder Morgan failed to use the highest and best practicable treat-

ment to maintain these toxic materials at the lowest possible levels.

49.     Kinder Morgan violated Schedules A.4.a and F.A6 of the Permits each and every

day since March 1, 2015 that Kinder Morgan discharged iron, dissolved copper, benzo(a)anthro-

cene, benzo(a)pyrene, benzo(b)fluoranthene 3,4, benzo(k)fluoranthene, chrysene, dibenz(a,h)an-

thracene, or indeno(1,2,3-cd)pyrene from the Facility. As noted in Tables 1-3 that are attached to

the Notice Letter as Appendix A, some of those discharges and violations occurred on March 14,

2015; May 1, 2015; October 25, 2015; November 13, 2015; January 17, 2016; April 4, 2016; Oc-

tober 26, 2016; November 22, 2016; February 15, 2017; March 15, 2017; November 10, 2017;

November 30, 2017, June 8, 2018; October 5, 2018; November 4, 2018; November 23, 2018;

January 20, 2019; February 14, 2019; May 15, 2019; September 17, 2019; and October 16, 2019.

Other violations occurred each and every day since March 1, 2015 on which there was 0.1 inch

or more of precipitation at the Facility because, on information and belief, on those days the Fa-

cility discharged pollutants, industrial stormwater or wastewater to the Willamette River that in-

cluded iron, dissolved copper, benzo(a)anthrocene, benzo(a)pyrene, benzo(b)fluoranthene 3,4,

benzo(k)fluoranthene, chrysene, dibenz(a,h)anthracene, or indeno(1,2,3-cd)pyrene in excess of

one or more of the impairment pollutant benchmarks established in the Permits and permit as-

signment letters for the Facility. Defendant's violations of Schedules A.4.a and F.A6 of the Per-

mits are described in the fifth paragraph of Section II.D of the Notice Letter and are incorporated

herein by reference. These violations are ongoing.

50.    Additionally, Schedules A.4.b of the Permits require Kinder Morgan to take cer-

tain actions upon becoming aware that a discharge from the Facility caused or contributed to an

exceedance of water quality standards, including: investigating the conditions that triggered the

violation; reviewing the SWPCP to ensure compliance with the permit; submitting a Water Qual-

ity Standards Corrective Action report within thirty days of receiving the relevant monitoring

data, which report must meet certain criteria stated in the Permits; and implementing any re-

quired corrective actions before the next storm event or within thirty days after discovering the

violation, whichever comes first. Kinder Morgan violated these requirements by failing to investigate the conditions triggering water quality exceedances for iron, dissolved copper, benzo(a)anthrocene, benzo(a)pyrene, benzo(b)fluoranthene 3,4, benzo(k)fluoranthene, chrysene, dibenz(a,h)anthracene, or indeno(1,2,3-cd)pyrene; failing to review the SWPCP to ensure compliance with the Permits; failing to submit each and every required Water Quality Standards Corrective Action report within thirty days of receiving the relevant monitoring data; and failing to implement required corrective actions before the next storm event or within thirty days after discovering the violation, whichever comes first. Defendant's violations of Schedules A.4.b of the Permits are described in the final paragraph of Section II.D of the Notice Letter and are incorporated herein by reference. These violations occurred each and every day since March 1, 2015, and are ongoing.

**5.     Kinder Morgan Violated Its Permits by Failing to Comply with the Permits' Inspection Requirements.**

51.     Schedules B.7.a of the Permits require Kinder Morgan to perform monthly inspections of "areas where industrial materials or activities are exposed to stormwater and areas where stormwater control measures, structures, catch basins, and treatment facilities are located." These inspections must include "visual observation for the presence of floating, suspended or settleable solids, color, odor, foam, visible oil sheen, or other obvious indicators of pollution in the stormwater discharge at all discharge point(s) . . . ." When these observations show evidence of such stormwater pollution, Kinder Morgan must complete a Tier I corrective action report. These visual observations "must be conducted during a discharge event if one occurs during the month, regardless whether the monthly site inspection has already occurred." Inspections must include all discharge points. And Schedule B.7.b of the 2012 Permit and Schedule B.7.f of the

2017 Permit require Kinder Morgan to document all inspections in an inspection report that includes certain specific information and that is retained on site and submitted to ODEQ or BES upon request.

52. Kinder Morgan violated the inspection requirements in Schedules B.7 of the Permits on multiple occasions. For example, Kinder Morgan violated Schedule B.7.a., B.7.b., and B.7.c. by failing to inspect Outfalls 003 and 004 on a monthly basis between March 1, 2015 and when Kinder Morgan acknowledged discharges from those outfalls in late 2018. These requirements and Defendant's violations thereof are described in Section II.E of the Notice Letter and are hereby incorporated by reference. These violations are ongoing.

**6.    Kinder Morgan Violated Its Permits by Failing to Comply with Additional Requirements Applicable to Outfalls 003 and 004 and Other Sources of Discharge at the Facility.**

53. Schedules B.2.b of the Permits require Kinder Morgan to ensure that stormwater samples are representative of discharges from the Facility. Kinder Morgan violated these Permit conditions each and every day since March 1, 2015 that it sampled discharges from Outfalls A (001) or B (002) without sampling discharges from Outfalls 003 or 004 because samples from Outfalls A (001) and B (002) are not representative of samples from Outfalls 003 or 004.

54. Schedule B.2.c of the Permits require Kinder Morgan to monitor each discharge point unless certain circumstances apply. Schedule B.2.e and Table 4 of the 2012 Permit required Kinder Morgan to monitor stormwater discharges for statewide benchmark pollutants and applicable sector-specific benchmark pollutants four times per year and to monitor stormwater discharges for impairment pollutants two times per year. Schedule B.2.f and Table 5 of the 2017 Permit then require Kinder Morgan to monitor stormwater discharges for statewide benchmark pollutants, applicable sector-specific benchmark pollutants, and any impairment pollutants four

times per year. Kinder Morgan violated these conditions of the 2012 Permit and 2017 Permit by failing to monitor Outfalls 003 and 004 four times per year between March 1, 2015 and November 4, 2018.

55.    These requirements and Defendant's violations thereof are described in Section II.F of the Notice Letter and are hereby incorporated by reference. These violations are ongoing or reasonably likely to recur.

### 7.    Kinder Morgan Violated Its Permits by Failing to Comply with the Permits' Requirements to Prepare and Submit Noncompliance Reports.

56.    Schedules F.D6 of the Permits require Kinder Morgan to report all instances of noncompliance with its permit not reported under General Condition D4 or D5 at the time Kinder Morgan submits monitoring reports. Each noncompliance report must include: (1) a description of the noncompliance and its cause; (2) the period of noncompliance, including exact dates and times; (3) the estimated time the noncompliance is expected to continue if it has not been corrected; and (4) the steps taken or planned to reduce, eliminate, and prevent reoccurrence of the noncompliance. Kinder Morgan violated Schedules F.D6 of the Permits by failing to prepare and submit noncompliance reports that fully and accurately identify Kinder Morgan's noncompliance with the Permits and that include all the required information. These requirements and Defendant's violations thereof are described in Section II.G of the Notice Letter and are hereby incorporated by reference. These violations have occurred each and every day since March 1, 2015, and are ongoing.

### 8.    Kinder Morgan Violated its Permits by Failing to Comply with the Permits' General Requirements.

57.    Schedules F.A1 of the Permits require Kinder Morgan to comply with all conditions of its Permits. Each and every permit violation described herein is also a violation of

COMPLAINT – 22

Schedules F.A1 of the Permits. Kinder Morgan violated these Permit conditions each and every day since March 1, 2015. These violations are ongoing.

58.    Schedules F.A3 of the Permits require Kinder Morgan to take all reasonable steps to minimize or prevent any discharge in violation of the Permits. Each and every permit violation described herein is also a violation of Schedules F.A3 of the Permits. Kinder Morgan violated these Permit conditions each and every day since March 1, 2015, by violating the Permits and by failing to take reasonable steps to minimize or prevent discharges in violation of the Permits. These violations are ongoing.

59.    Schedules F.B1 of the Permits require Kinder Morgan to "at all times properly operate and maintain all facilities and systems of treatment and control (and related appurtenances) that are installed or used by the permittee to achieve compliance with the conditions" of the Permits. Kinder Morgan violated these Permit conditions each and every day since March 1, 2015 by failing to properly operate and maintain all systems of treatment and control, including Kinder Morgan's SWPCP, to achieve compliance with the Permits. These violations are ongoing.

60.    These requirements and Defendant's violations thereof are described in Section II.H of the Notice Letter and are hereby incorporated by reference.

61.    Defendant's unlawful discharges degrade the environment and the water quality of the Willamette River and the Columbia River.

62.    Defendant's unlawful discharges of pollutants and permit violations were avoidable had Defendant been diligent in overseeing and controlling operations, maintenance, monitoring, and compliance with the law.

63.    Defendant has benefitted economically from its unlawful discharges of pollutants

and permit violations.

64.    The NPDES permit violations committed by Defendant are continuing or are rea-sonably likely to recur. Any and all additional violations of Defendant's NPDES Permits and the CWA which occur after those described in NEDC's Notice Letter but before a final decision in this action are continuing violations subject to this Complaint.

65.    Without the imposition of appropriate civil penalties and the issuance of an in-junction, Defendant is likely to continue to violate its NPDES permit and the CWA to the further injury of NEDC, its members, and others.

## VI.    CAUSE OF ACTION.

66.    Plaintiff hereby alleges and incorporates by reference all of the preceding para-graphs.

67.    Defendant Kinder Morgan is a "person" within the meaning of Section 301(a) of the Clean Water Act, 33 U.S.C. §1311(a), and is subject to suit under the Act's citizen suit provi-sion, 33 U.S.C. § 1365.

68.    The violations of Defendant's NPDES Permits described herein and in the Notice Letter constitute violations of an "effluent standard or limitation" as defined by section 505 of the CWA, 33 U.S.C. § 1365. Defendant Kinder Morgan has violated and is violating an "effluent standard or limitation" as that term is defined by Section 505 of the Act, 33 U.S.C. § 1365, by violating the terms and conditions of its NPDES Permits.

//

//

COMPLAINT – 24

## VII.   RELIEF REQUESTED.

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

A.      Declare that Defendant has violated and continues to be in violation of its NPDES Permits and the Clean Water Act, as alleged herein;

B.      Enjoin Defendant from operating its Facility in a manner that results in further violations of its NPDES permits or the CWA;

C.      Order Defendant to immediately implement a SWPCP that complies with its 2017 Permit or any subsequent NPDES permit applicable to the Facility;

D.      Order Defendant to remediate the environmental damage and ongoing impacts resulting from its violations;

E.      Order Defendant to develop and/or comply with appropriate quality assurance procedures to ensure future compliance with the Clean Water Act;

F.      Order Defendant to provide NEDC, for a period of time beginning on the date of this Court's Order granting NEDC relief and running for one year after Defendant achieves compliance with all of the conditions of its NPDES permit, with copies of all reports and other documents that Defendant submits to the EPA, ODEQ, or BES regarding Defendant's NPDES Permit for the Facility at the time those documents are submitted to these agencies;

G.      Order Defendant to take specific actions to remediate the environmental harm caused by its violations;

H.      Grant such other preliminary and/or permanent relief as NEDC may from time to time request during the pendency of this case;

I.      Order Defendant to pay civil penalties pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a), and 40 C.F.R. § 19;

COMPLAINT – 25

J.      Award NEDC its litigation expenses, including reasonable attorneys' and expert

witness fees, as authorized by Section 505(d) of the CWA, 33 U.S.C. § 1365(d); and

K.      Award such other relief as this Court deems appropriate.

RESPECTFULLY SUBMITTED this 29th day of April 2020.

KAMPMEIER & KNUTSEN PLLC

By: s/ Emma Bruden
    Emma A. O. Bruden, OSB # 163525
Brian Knutsen, OSB # 112266
221 SE 11th Avenue, Suite 217
Portland, Oregon 97214
Telephone: (503) 841-6515 (Knutsen)
         (503) 719-5641 (Bruden)
Email: brian@kampmeierknutsen.com
     emma@kampmeierknutsen.com


NORTHWEST ENVIRONMENTAL DEFENSE CENTER

Jonah Sandford, OSB # 154711
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
Telephone: (503) 768-6726
Email: jonah@nedc.org

*Attorneys for Plaintiff Northwest Environmental Defense Center*