DocuSign Envelope ID: 4077A413-E719-44D5-AA6B-B41BD9TA6301

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **NORTHWEST ENVIRONMENTAL DEFENSE CENTER**, an Oregon non-profit corporation,<br><br>    Plaintiff,<br><br>v.<br><br>**KINDER MORGAN BULK TERMINALS, LLC**, a foreign corporation,<br><br>    Defendant. | Case No. 3:20-cv-00706-HZ<br><br><br>CONSENT DECREE |

WHEREAS, Plaintiff Northwest Environmental Defense Center (hereinafter "Plaintiff") is a non-profit membership organization dedicated to protecting the natural resources of the Pacific Northwest;

WHEREAS, Defendant Kinder Morgan Bulk Terminals, LLC ("Defendant") leases and operates a bulk materials storage and transfer site at the Port of Portland and at or near 11040 North Lombard Street, Terminal 4, Portland, Oregon 97203 (hereinafter "Facility");

WHEREAS, Defendant discharges pollutants and stormwater associated with industrial activity to the Willamette River from at least two basins at the Facility, which are referenced herein as "Basin L" and "Basin M";

WHEREAS, the Oregon Department of Environmental Quality ("ODEQ") authorized Defendant to discharge pollutants and stormwater associated with industrial activity from its Facility from July 1, 2012 to July 31, 2022 by issuing Defendant coverages under the General

CONSENT DECREE - 1
Case No. 3:20-cv-00706-HZ

Kampmeier & Knutsen PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 719-5641

National Pollutant Discharge Elimination System Stormwater Discharge Permit Number 1200-Z under file and permit number 100025 ("NPDES Permits");

WHEREAS, Defendant's NPDES Permits require Defendant to implement a stormwater pollution control plan at its Facility; to sample stormwater discharges from the Facility for certain pollutants; and, to protect waters of the state of Oregon, to modify stormwater management practices at the Facility when discharges of pollutants from the Facility exceed specified state-wide benchmarks, sector-specific benchmarks, or reference concentrations for impairment pollutants (collectively, "Benchmarks");

WHEREAS, on February 12, 2020, Plaintiff notified Defendant, Defendant's registered agent, the Administrator of the U.S. Environmental Protection Agency (hereinafter "EPA"), the Administrator of EPA Region 10, and ODEQ of alleged violations by Defendant of its NPDES Permits and the Clean Water Act and of Plaintiff's intent to sue Defendant for those alleged violations (hereinafter "Notice Letter");

WHEREAS, Plaintiff filed the Complaint in this action on April 29, 2020, alleging Defendant is in ongoing violation of the Clean Water Act, 33 U.S.C. § 1251 *et seq.*, for failing to comply with its NPDES Permits;

WHEREAS, Plaintiff's Complaint seeks a declaratory judgment, injunctive relief, the imposition of civil penalties, and an award of costs, including attorneys' and expert witness fees, for Defendant's alleged violations of its NPDES Permits and the Clean Water Act;

WHEREAS, Defendant denies Plaintiff's claims and any liability for the alleged violations;

Kampmeier & Knutsen PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 719-5641

WHEREAS, Plaintiff and Defendant (individually a "Party" and collectively "the Parties") have engaged in discussions regarding settlement of this litigation, which discussions have included an assessment of the facts surrounding the alleged violations;

WHEREAS, the Parties have agreed to settlement terms, which are stated and reflected in this proposed Consent Decree, and which when entered as an order of the Court will require Defendant to invest substantial additional funding in stormwater collection and treatment systems to ensure discharges of pollutants and stormwater associated with industrial activity from the Facility comply with Defendant's NPDES Permits;

WHEREAS, the Parties agree that settlement of these matters on the terms set forth in this Consent Decree is in the best interest of the Parties and the public, and that entry of this Consent Decree without additional litigation is the most appropriate means of resolving this action;

WHEREAS, Plaintiff and Defendant have each sought and obtained the advice of their own independent legal counsel before agreeing to be bound by this Consent Decree;

WHEREAS, Plaintiff and Defendant consent to entry of this Decree without trial, adjudication, or admission of any issue of fact or law with respect to Plaintiff's claims or allegations and without admission of any fact, allegation, or legal argument contained in Plaintiff's Notice Letter or the Complaint in this action; and

WHEREAS, Plaintiff and Defendant recognize that no consent decree may be entered in a Clean Water Act suit in which the United States is not a party prior to forty-five (45) days following the receipt of a copy of the proposed consent decree by the United States Attorney General and the Administrator of the U.S. EPA pursuant to 33 U.S.C. § 1365(c)(3); accordingly,

Kampmeier & Knutsen PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 719-5641

DocuSign Envelope ID: 4077A413-E719-44D5-AA6B-B41BD9TA6301

upon the signing of this Consent Decree by the Parties, Plaintiff shall serve copies of this

Consent Decree upon the United States Attorney General and the Administrator of the U.S. EPA.

NOW THEREFORE, without trial of any issue of fact or law, and without admission by

Defendant of the facts or violations alleged in the Notice Letter or the Complaint, and upon

consent of the Parties and consideration of the mutual promises herein contained, IT IS

HEREBY ORDERED, ADJUDGED AND DECREED as follows:

1.      This Court has jurisdiction over the Parties and subject-matter of this action;

2.      The undersigned representative for each Party certifies that he or she is fully

authorized by the Party or Parties whom he or she represents to enter into the terms and

conditions of this Consent Decree and to legally bind the Party or Parties and their successors in

interest to it;

3.      This Consent Decree shall inure to the benefit of, and be binding upon, the Parties

and their successors, assigns, officials, agents, representatives, officers, directors, and employees.

Changes in the organizational form or status of a Party shall have no effect on the binding nature

of this Consent Decree or its applicability;

4.      Defendant is subject to and shall abide by the terms and conditions of this

Consent Decree. Defendant specifically represents and warrants that it is capable of timely

satisfying all monetary obligations imposed by this Consent Decree and, subject to Paragraph

9.d., capable of meeting all deadlines imposed by this Consent Decree;

5.      Defendant retains the right to controvert in any subsequent proceedings the

validity of the facts or determinations alleged in the Notice Letter or Complaint. Neither this

Consent Decree, nor the terms thereof, nor performance of the terms, shall constitute or be

construed as an admission or acknowledgment by Defendant of any violation of any law by

DocuSign Envelope ID: 4077A413-E719-44D5-AA6B-B41BD9TA6301

Defendant, its parents, subsidiaries, or affiliates, or by any of their officers, directors, employees, agents, successors, or assigns;

6.      This Consent Decree shall take effect on the date it is entered as an Order of the Court ("Effective Date");

7.      This Consent Decree shall terminate on January 1, 2022 or thirty (30) days after Defendant completes performance of all the obligations set forth in Paragraphs 9, 10, 11, 12, and 13 of this Consent Decree, whichever occurs later (the "Termination Date");

8.      Except as provided for herein, during the pendency of this Consent Decree, Defendant shall comply with the terms and conditions of the National Pollutant Discharge Elimination System permit applicable to the Facility;

9.      Additionally, Defendant shall make the following improvements to its stormwater management measures at the Facility:

a.      By December 1, 2020, Defendant shall install seven biochar downspout filters to filter roof runoff from the soda ash storage building and the warehouse in Basin L at the Facility, as described in Defendant's December 27, 2019 "Tier II Report, Mass-Reduction Tier II Waiver Request and Stormwater Pollution Control Plan Addendum," (hereinafter "Tier II Report"), excerpts of which are attached to this Consent Decree as Attachment A;

b.      By June 30, 2021, Defendant shall install and commence operation of a stormwater infiltration basin and associated improvements to capture and route stormwater in Basin M at the Facility to a pretreatment forebay that will settle out coarse solids prior to discharging collected stormwater to an infiltration basin, where the stormwater will infiltrate through engineered soil media, as described in the Tier II

Kampmeier & Knutsen PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 719-5641

DocuSign Envelope ID: 4077A413-E719-44D5-AA6B-B41BD9TA6301

Report that is attached hereto as Attachment A. Defendant shall also: (i) maintain operational and maintenance control over the Basin M infiltration basin; (ii) include scalability provisions in design plans for the infiltration basin to allow for increased capacity if needed for future facility expansion or to accommodate rainfall or stormwater flows at the site; (iii) ensure the fore basin is 50% of the capacity of the infiltration basin; (iv) add an impervious (high-density polyethylene, low-density polyethylene, or similar material) liner to the fore basin for ease of removal of sediments; (v) add a gauge to the infiltration basin to measure sediment accumulation and infiltration rates; and (vi) operate and maintain the infiltration basin to ensure the basin operates as designed;

  c. By September 30, 2021, Defendant shall install an end-of-pipe stormwater treatment system designed to eliminate discharges of pollutants in excess of then-applicable Benchmarks from stormwater in Basin L. If Defendant determines the "Aquip" stormwater treatment system designed by StormwateRx is incompatible with the existing stormwater treatment system in Basin L, Defendant shall identify and install an alternative treatment system designed to eliminate discharges of pollutants in excess of then-applicable Benchmarks from stormwater in Basin L. Plaintiff shall have the right to review and approve such alternative treatment system prior to installation; however, Plaintiff shall not unreasonably withhold approval for any system whose design specifications indicate the system will reduce discharges of pollutants from Basin L below Benchmarks specified in the National Pollutant Discharge Elimination System permit that will apply to the Facility when Defendant completes installation of the treatment system for Basin L;

Kampmeier & Knutsen PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 719-5641

DocuSign Envelope ID: 4077A413-E719-44D5-AA6B-B41BD9TA6301

      d.     If, due to new circumstances beyond Defendant's control that arise after the effective date of this Consent Decree, Defendant cannot meet one or more of the deadlines established by Paragraph 9 of this Consent Decree, Defendant may seek an extension of such deadline(s) by notifying Plaintiff in writing of the need for an extension and proposing a new deadline. Such notice shall be provided to Plaintiff no later than ten (10) business days prior to the deadline in order to allow sufficient time for the Parties to confer on schedule modifications. Plaintiff shall not unreasonably withhold approval of reasonable and necessary extension requests. If the Parties agree to extend a deadline in Paragraph 9 of this Consent Decree, the Parties shall file with the Court a stipulated modification to this Consent Decree and Defendant shall promptly reimburse Plaintiff for costs and the reasonable attorneys' fees incurred in working on the extension and stipulation to modify the deadline. Stipulated deadline extensions under this Paragraph 9.d. also modify the deadlines that trigger Defendant's obligations to pay stipulated penalties under Paragraphs 12.a., 12.b., and 12.c. of this Consent Decree. If the Parties cannot agree on a deadline extension, Defendant may seek relief from the Court pursuant to Paragraph 14 of this Consent Decree;

10.     **Reporting Data and Providing Documents.** On a quarterly basis, beginning with the quarter ending December 31, 2020, and not later than the thirtieth (30th) day following the end of each calendar quarter, Defendant shall forward to Plaintiff copies of all reports, sample results, and documents that Defendant submits to the City of Portland Bureau of Environmental Services concerning Defendant's compliance with the Clean Water Act and any National Pollutant Discharge Elimination System permit applicable to the Facility, including

Kampmeier & Knutsen PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 719-5641

Discharge Monitoring Reports, laboratory analyses, Tier I and Tier II corrective action reports, correspondence, and Facility inspection reports;

11.     Within thirty (30) days following the Effective Date of this Consent Decree, Defendant shall pay ONE HUNDRED TWENTY-FIVE THOUSAND DOLLARS ($125,000.00) to Columbia Riverkeeper, a local 501(c)(3) non-profit organization, as a supplemental environmental project to support one or more projects to reduce stormwater pollution or enhance local water quality conditions in the Columbia River basin, as described in Attachment B to this Consent Decree. Defendant shall make the payment required by this Paragraph 11 by check payable and delivered to Columbia Riverkeeper, 407 Portway Avenue, Suite 301, Hood River, Oregon 97031. Correspondence with the check shall bear the notation "Northwest Environmental Defense Center v. Kinder Morgan Bulk Terminals, LLC, Clean Water Act Settlement," with a copy provided to Plaintiff at the same time Defendant delivers the check to Columbia Riverkeeper;

12.     In addition to the payment required by Paragraph 11 of this Consent Decree:

a.     Defendant shall pay FIVE THOUSAND DOLLARS ($5,000.00) to Columbia Riverkeeper if Defendant misses the deadline established in Paragraph 9.a. of this Consent Decree, as modified by any stipulated extensions filed with the Court pursuant to Paragraph 9.d. of this Consent Decree, for installation of the downspout filters in Basin L. Further, Defendant shall pay an additional TWO THOUSAND DOLLARS ($2,000.00) to Columbia Riverkeeper for each month after the applicable deadline for installing the downspout filters for which the seven biochar downspout filters in Basin L are not installed;

Kampmeier & Knutsen PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 719-5641

b.      Defendant shall pay FIFTEEN THOUSAND DOLLARS ($15,000.00) to Columbia Riverkeeper if Defendant misses the deadline established in Paragraph 9.b. of this Consent Decree, as modified by any stipulated extensions filed with the Court pursuant to Paragraph 9.d. of this Consent Decree, for construction and commencement of operation of the stormwater infiltration system for Basin M. In addition, Defendant shall pay an additional FIVE THOUSAND DOLLARS ($5,000.00) to Columbia Riverkeeper for each month after the applicable deadline for installing the infiltration basin for which the Basin M stormwater infiltration system is not constructed and operational;

c.      Defendant shall pay FIVE THOUSAND DOLLARS ($5,000.00) to Columbia Riverkeeper if Defendant misses the deadline established in Paragraph 9.c. of this Consent Decree, as modified by any stipulated extensions filed with the Court pursuant to Paragraph 9.d. of this Consent Decree, for installation of the end-of-pipe stormwater treatment system designed to eliminate discharges of pollutants in excess of then-applicable Benchmarks from stormwater in Basin L. Further, Defendant shall pay an additional TWO THOUSAND DOLLARS ($2,000.00) to Columbia Riverkeeper for each month after the applicable deadline for installing the end-of-pipe stormwater treatment system for Basin L for which that treatment system is not installed;

d.      Defendant shall pay TWO THOUSAND DOLLARS ($2,000) to Columbia Riverkeeper each time a stormwater sample from Basin M at the Facility exceeds an applicable state-wide benchmark, sector-specific benchmark, or reference concentration for impairment pollutants after installation of the stormwater infiltration basin that is required by Paragraph 9.b. of this Consent Decree. Further, Defendant shall pay TWO

Kampmeier & Knutsen PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 719-5641

THOUSAND DOLLARS ($2,000) to Columbia Riverkeeper each time a stormwater sample from Basin L at the Facility exceeds an applicable state-wide benchmark, sector-specific benchmark, or reference concentration for impairment pollutants after installation of the end-of-pipe stormwater treatment system that is required by Paragraph 9.c. of this Consent Decree;

e.    Defendant shall make any payments required by Paragraph 12 of this Consent Decree by check made payable and delivered to Columbia Riverkeeper, 407 Portway Avenue, Suite 301, Hood River, Oregon 97031. The check or memorandum shall indicate that the payment is to support one or more projects to reduce stormwater pollution or enhance local water quality conditions in the Columbia River basin, as described in Attachment B to this Consent Decree. Defendant shall notify Plaintiff when it makes a payment required by Paragraph 12 of this Consent Decree;

f.    Defendant shall make any payments required by Paragraph 12 of this Consent Decree within thirty (30) days following the event that triggers the payment obligation;

13.    Within thirty (30) days following the Effective Date of this Consent Decree, Defendant shall pay ONE HUNDRED SIXTY-THREE THOUSAND TWO HUNDRED THIRTY-THREE DOLLARS AND SEVENTY CENTS ($163,233.70) to Kampmeier & Knutsen PLLC for costs and attorneys' fees incurred in representing Plaintiff in this matter. Defendant shall make the payment required by this Paragraph 13 by check made payable and delivered to Kampmeier & Knutsen PLLC, 811 First Avenue, Suite 468, Seattle, Washington 98104. Defendant shall notify Plaintiff in writing when it makes the payment required by this Paragraph 13;

Kampmeier & Knutsen PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 719-5641

14.    While this Consent Decree remains in force, the Parties may re-open this case without filing fee to apply to the Court for any further order or relief that may be necessary regarding compliance with this Consent Decree or to resolve any dispute regarding this Consent Decree. Before applying to the Court under this Paragraph 14, the Parties must first seek to resolve the dispute themselves. The Party identifying or wishing to raise an issue or dispute must provide the other Party's counsel of record with written notice detailing the nature of the issue or dispute, the underlying facts, and the legal grounds for the alleged issue or dispute. Within twenty (20) days of receipt of such notice, the Parties shall confer regarding the issue or dispute and seek to develop a mutually agreed upon plan, including implementation dates, to resolve the dispute or alleged breach. If the Parties are unable to resolve the dispute, either Party may seek relief from this Court;

15.    All notices and other communications regarding this Consent Decree shall be in writing and shall be fully given by mailing via first-class mail, postage pre-paid; by delivering the same by hand; or by sending the same via e-mail to the following addresses, or to such other addresses as the Parties may designate by written notice, provided that communications that are mailed shall not be deemed to have been given until three business days after mailing:

For Plaintiff Northwest Environmental Defense Center:

Mr. Mark Riskedahl, Executive Director
Northwest Environmental Defense Center
10101 S. Terwilliger Blvd.
Portland, Oregon 97219
msr@nedc.org

For Defendant Kinder Morgan Bulk Terminals, LLC:

Noa S. Lidstone
General Manager PNW Region
KINDER MORGAN TERMINALS
1610 C Street, Suite 205

CONSENT DECREE - 11
Case No. 3:20-cv-00706-HZ

Vancouver, WA 98663

Noa_Lidstone@kindermorgan.com

16.     Upon entry as an order of the Court, this Consent Decree constitutes a full and complete settlement of all of the type of Clean Water Act violations alleged in the Complaint that occurred at the Facility prior to and through the Termination Date;

17.     Upon entry of this Consent Decree as an order of the Court, and except as provided herein, Plaintiff releases Defendant, its parents, subsidiaries, affiliates, and each of their officers, directors, shareholders, employees, agents, affiliates and consultants of Defendant from the claims and alleged violations of the Clean Water Act, 33 U.S.C. § 1251 *et seq.*, stated in the Notice Letter and Complaint; any claims or alleged violations of the same type that occur at the Facility while this Consent Decree is in force; and any new claims based upon the same facts that Plaintiff alleged formed the basis of the claims and alleged violations stated in the Notice Letter and Complaint;

18.     Except as provided in Paragraph 9.d. of this Consent Decree, which authorizes the Parties to file stipulated modifications to deadlines established by Paragraph 9 herein, this Consent Decree may be modified only upon the written consent of the Parties and the approval of the Court;

19.     If for any reason the Court should decline to enter this Consent Decree as an Order of the Court in the form presented, this Consent Decree and the settlement embodied herein shall be voidable at the sole discretion of either Party. If voided, the Parties may resume litigation or continue negotiations in an attempt to cure any objection raised by the Court to entry of this Consent Decree;

20.     If, after entry of this Consent Decree as an Order of the Court, any term, covenant, or condition of this Consent Decree is held to be invalid or unenforceable in any

CONSENT DECREE - 12

Case No. 3:20-cv-00706-HZ

DocuSign Envelope ID: 4077A413-E7F9-44D5-AA6B-B41BD91A6301

respect, such invalidity or unenforceability shall not affect any other provision included in this Consent Decree;

21.     This Court shall retain jurisdiction to oversee and ensure compliance with this Consent Decree; and

22.     The provisions in section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), regarding awards of costs of litigation (including reasonable attorneys' and expert witness fees) to any prevailing or substantially prevailing Party, shall apply to any proceeding seeking to enforce the terms and conditions of this Consent Decree.

IT IS SO ORDERED.

Dated:    November 27, 2020

_____
Marco A. Hernández
United States District Judge

By signing below, Plaintiff Northwest Environmental Defense Center and Defendant Kinder Morgan Bulk Terminals LLC certify that they are authorized to enter into this agreement and agree to entry of this proposed Consent Decree as an order of the Court.

NORTHWEST ENVIRONMENTAL DEFENSE CENTER

Signature: _____     Dated: September 25, 2020
            Mark Riskedahl, Executive Director

KINDER MORGAN BULK TERMINALS, LLC

Signature: _____     Dated: 9/28/2020
            1500B8D3B65A408...

Name & Title:    Joshua Etzel        Vice President

CONSENT DECREE - 13
Case No. 3:20-cv-00706-HZ

Kampmeier & Knutsen PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 719-5641

Attachment A

# TIER II REPORT, MASS-REDUCTION TIER II WAIVER REQUEST AND STORMWATER POLLUTION CONTROL PLAN ADDENDUM

## KINDER MORGAN PORT OF PORTLAND TERMINAL 4

*Prepared for*

**KINDER MORGAN BULK TERMINALS, INC.**

SITE NAME: PORT OF PORTLAND TERMINAL 4
SITE ADDRESS: 11040 NORTH LOMBARD STREET
PORTLAND, OR 97203
MULTNOMAH COUNTY
DEQ FILE NO.: 1000025
EPA PERMIT NO.: ORR800148
FACILITY CONTACT: BRAD CLINEFELTER
(503) 285-2990
BRAD_CLINEFELTER@KINDERMORGAN.COM

*December 27, 2019*
*Project No. 1017.01.08*



MAUL
FOSTER
ALONGI

*Prepared by*
*Ada Banasik, PE*
*2001 NW 19th Avenue, Suite 200, Portland OR 97209*

# TIER II REPORT, TIER II MASS-REDUCTION WAIVER REQUEST AND STORMWATER POLLUTION CONTROL PLAN ADDENDUM

### KINDER MORGAN PORT OF PORTLAND TERMINAL 4

*The material and data in this document were prepared under the supervision and direction of the undersigned.*

MAUL FOSTER & ALONGI, INC.



**EXPIRES: 12/31/2021**
This digital seal certifies the signatory
and document content.

_____

*Ada Banasik, PE*
*Principal Engineer*

# KINDER MORGAN CERTIFICATION

*I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gathered and evaluated the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.*

*Brad Clinefelter*
*Terminal 4 Manager*

*Federal regulations require this document to be signed as follows:*
*For a corporation, by a principal executive officer of at least the level of vice president;*
*For a partnership or sole proprietorship, by a general partner or the proprietor, respectively; or*
*For a municipality, state, federal, or other public facility, by either a principal executive officer or ranking elected official.*

This document shall be signed by a person described above or by a duly authorized representative of that person.  A person is a duly authorized representative only if:

1. The authorization is made in writing by a person described above and submitted to the Ecology.
2. The authorization specifies either an individual or a position having responsibility for the overall operation of the regulated facility, such as the position of plant manager, superintendent, position of equivalent responsibility, or an individual or position having overall responsibility for environmental matters.

Changes to authorization.  If an authorization under number 2 above is no longer accurate because a different individual or position has responsibility for the overall operation of the facility, a new authorization satisfying the requirements of number 2 above shall be submitted to Ecology prior to, or together with, any reports, information, or applications to be signed by an authorized representative.

# 1 TIER II REPORT

This Tier II Report, Tier II Volume-Reduction Waiver Request and Addendum to the Stormwater Pollution Control Plan (SWPCP) (collectively referred to as Tier II Report) was prepared to address Tier II corrective action requirements of the National Pollutant Discharge Elimination System Stormwater Discharge Permit No. 1200-Z (Permit) Schedule A.11 for the Kinder Morgan Bulk Terminals, Inc. (Kinder Morgan) facility located at the Port of Portland (Port) Terminal 4 at 11040 North Lombard Street, Portland, Oregon (site).

## 1.1 Tier II Discharge Points, Parameter and Corresponding Geometric Mean Concentration

The geometric mean of the stormwater discharge concentrations reported during the second year of coverage under the Permit have met the Permit benchmarks except for total lead and total zinc at Monitoring Location 001 and total zinc at Monitoring Location 002. The second-year benchmark evaluation showed a geometric mean total lead concentration of 0.056 milligram per liter (mg/L) at Monitoring Location 001, exceeding the Permit benchmark of 0.040 mg/L. The geometric mean total zinc concentration was 0.13 mg/L at Monitoring Location 001 and 0.15 mg/L at Monitoring Location 002, exceeding the Permit benchmark of 0.12 mg/L. Additionally, four samples collected during the second-year benchmark evaluation from Monitoring Location 001 were outside of the pH benchmark range. This Tier II Report proposes stormwater treatment measures designed with the goal of achieving the Permit total zinc benchmark at Monitoring Location 002, and stormwater infiltration measures designed to reduce the mass of zinc and lead and volume of stormwater with elevated pH discharged from Monitoring Location 001.

## 1.2 Proposed Tier II Measures

Kinder Morgan proposes downspout filters as Tier II treatment measures, and an infiltration basin as a Tier II mass-reduction measure, as outlined in the following sections and depicted on the attached figure.

### 1.2.1 Proposed Treatment Measures

Consistent with Permit Schedule A.11.j, Kinder Morgan proposes stormwater treatment measures for Basin L designed with the goal of meeting the Permit total zinc benchmark at Monitoring Location 002. The proposed treatment measures for Basin L, depicted on the attached figure, include seven biochar downspout filters that will filter roof runoff from the soda ash storage building and the warehouse.

The biochar filters will be installed at each of the downspouts shown on the figure, such that roof runoff will flow into each tote via gravity flow. Stormwater will filter through the media layers and

will be collected through an underdrain system that will discharge the treated runoff onto the pavement.

## 1.2.2 Proposed Infiltration Measures

Consistent with Permit Schedule A.11.k, Kinder Morgan proposes a stormwater infiltration basin to infiltrate Basin M runoff, reduce the volume and frequency of stormwater discharges to Monitoring Location 001, as well as the associated mass of lead and zinc and volume and frequency of stormwater with elevated pH discharged to the Willamette River. Basin M stormwater will be pumped into the infiltration basin along with runoff from the remainder of the Port's Basin K. Kinder Morgan is requesting a mass-reduction waiver for total zinc and lead at Monitoring Location 001.

## 1.3  Rationale for the Selection of the Tier II Measures

The following sections present the rationale for the proposed Tier II measures.

## 1.3.1 Rationale for the Selection of Proposed Treatment Measures

A zinc source sampling investigation showed elevated zinc concentrations in roof runoff from the warehouse and soda ash buildings indicating that roof runoff is a significant source of zinc at Monitoring Location 002. Treating these sources of zinc in Basin L is likely to reduce the total zinc concentration at Monitoring Location 002 to below the Permit benchmark. The proposed Tier II stormwater treatment measures will utilize biochar downspout filters to reduce the concentration of total zinc in roof runoff. The proposed treatment measures were selected because the expected pollutant removal is anticipated to achieve the Permit benchmark and because the filters will fit into the available space on site, minimizing impact to site operations.

## 1.3.2 Rationale for the Selection of Proposed Infiltration Measures

Basin M is located within the Port's Basin K. The Port and Kinder Morgan have partnered to design, permit and construct a vegetated infiltration basin to infiltrate stormwater runoff from Basin K. The infiltration basin will reduce the frequency and volume of stormwater discharges to Monitoring Location 001, as well as the associated mass of zinc and lead to below the mass-equivalent benchmark. The proposed infiltration basin was selected because the mass-reduction of zinc and lead in stormwater discharges is anticipated to achieve the mass-equivalent benchmark, and reduce the mass of all other pollutants, including Willamette River impairment pollutants. Infiltration will also reduce the volume of stormwater with elevated pH discharged to the river.

## 1.3.3 Projected Reduction of Pollutant Concentrations

The following sections present the pollutant reduction rates for selected treatment technologies.

### 1.3.3.1    Projected Reduction of Zinc at Monitoring Location 002

Biochar downspout filters have shown zinc reduction efficiency up to 99 percent (see Appendix A). A 90 percent reduction efficiency was used to estimate the total zinc concentration at Monitoring Location 002 (0.063 mg/L) following the installation of the filters. This concentration is significantly below the Permit benchmark (0.12 mg/L). Appendix B contains zinc source sampling laboratory data and calculation of the predicted area-weighted zinc concentration at Monitoring Location 002 following the installation of the downspout filters. This will reduce the total zinc concentrations at Monitoring Location 002 from 0.15 mg/L (geometric mean) to 0.063 mg/L (58 percent).

### 1.3.3.2    Projected Reduction of Zinc, Lead, and pH at Monitoring Location 001

The infiltration basin will infiltrate 100 percent of the runoff generated in Basin M during the Tier II design storm, as well as the associated mass of zinc and lead discharged to Monitoring Location 001. Infiltration will also reduce the volume and frequency of stormwater with elevated pH discharged to the river. The infiltration basin will also reduce the mass of all other pollutants discharged to Monitoring Location 001, including the Willamette River impairment pollutants.

The DEQ Tier II Checklist outlines specific information that is to be provided for each drainage basin to request a mass-reduction waiver. The methodology that is used to complete the Tier II Waiver Basin Table (see page IV of this Addendum) is provided below.

1. Mass of the pollutant discharged based on the geometric mean concentration and assuming *no infiltration* is found by the following equation: The runoff volume is obtained from the Port's Storm Water Management Model (SWMM) output report (see Appendix C).

$$Mass\ Pollutant\ (lb) = Runoff\ Volume * geometric\ mean\ concentration\ of\ pollutant$$

$$Mass\ of\ Zinc\ (lb) = Runoff\ Volume\ (4{,}660\ CF) * \frac{7.48gal}{CF} * \frac{3.785\ L}{gal} * 0.13\frac{mg}{L} * \frac{lb}{453{,}592mg}$$

$$Mass\ of\ Zinc\ (lb) = 0.0378\ lb$$

$$Mass\ of\ Lead\ (lb) = Runoff\ Volume\ (4{,}660\ CF) * \frac{7.48gal}{CF} * \frac{3.785\ L}{gal} * 0.056\frac{mg}{L} * \frac{lb}{453{,}592mg}$$

$$Mass\ of\ Lead\ (lb) = 0.0163\ lb$$

2. Mass of pollutant discharged at the design storm, based on the geometric mean concentration and *accounting for infiltration:*

   According to the hydrologic analysis performed for the site, 100 percent of the design storm will be infiltrated. Therefore, the mass of zinc discharged at the design storm will be zero, because the volume of stormwater discharged to Monitoring Location 001 during the design storm is zero (i.e., 100 percent is infiltrated).

$$Mass\ of\ Zinc\ (lb) = 0\ lb$$

$$Mass\ of\ Lead\ (lb) = 0\ lb$$

3. Mass of pollutant discharged at the design storm, assuming a concentration equal to the Permit benchmark concentration (i.e., mass-equivalent benchmark):

$$Mass\ of\ Pollutant\ (lb) = Runoff\ Volume\ *\ statewide\ benchmark$$

$$Mass\ of\ Zinc\ (lb) = Runoff\ Volume\ (4{,}660\ CF) * \frac{7.48\ gal}{CF} * \frac{3.785\ L}{gal} * 0.12\ \frac{mg}{L} * \frac{lb}{453{,}592\ mg}$$

$$Mass\ of\ Lead\ (lb) = Runoff\ Volume\ (4{,}660\ CF) * \frac{7.48\ gal}{CF} * \frac{3.785\ L}{gal} * 0.040\ \frac{mg}{L} * \frac{lb}{453{,}592\ mg}$$

$$Mass\ of\ Zinc\ (lb) = 0.0349\ lb$$

$$Mass\ of\ Lead\ (lb) = 0.0116\ lb$$

4. Infiltration Rate: The infiltration rate is provided in the SWMM output report (see Appendix C).

$$Infiltration\ Rate\ \left(\frac{gal}{day}\right) = Infiltration\ Rate\ (0.20\ cfs) * \frac{7.48\ gal}{CF} * \frac{3600\ s}{hr} * \frac{24\ hour}{day}$$

$$Infiltration\ Rate\ \left(\frac{gal}{day}\right) = 129{,}254\ \frac{gal}{day}$$

## 1.3.4 Projected Reduction of Pollutant Mass

**Volume and Pollution Reduction Results**

|  | Basin L | Basin M | Kinder Morgan Facility (Basin L and Basin M) |
|---|---|---|---|
| Basin Area (sf) | 379,418 sf | 63,200 sf | 442,618 sf |
| Impervious Basin Area (sf) (100% Impervious, CN = 98) | 278,250 sf | 63,200 sf | 341,450 sf |
| Gravel Basin Area (sf) (Gravel only)* | 101,168 sf | - | 101,168 sf |
| Geometric Mean Total Zn | 0.15 mg/L | 0.13 mg/L | - |
| Total zinc discharged based on geometric mean (no infiltration) | 0.1886 (lb) | 0.0378 (lb) | 0.2264 (lb) |
| Total zinc discharged based on geometric mean (accounting for infiltration) | 0.1886 (lb) | 0 (lb) | 0.1886 (lb) |
| Mass-equivalent benchmark: total zinc discharged assuming concentration equal to benchmark (no infiltration) | 0.1509 (lb) | 0.0349 (lb) | 0.1858 (lb) |
| Geometric Mean Total Pb | - | 0.056 mg/L | - |
| Total lead discharged based on geometric mean (no infiltration) | - | 0.0163 lbs | 0.0163 lbs |
| Total lead discharged based on geometric mean (accounting for infiltration) | - | 0 lbs | 0 lbs |
| Mass-equivalent benchmark: total lead discharged assuming concentration equal to benchmark (no infiltration) | - | 0.0116 lbs | 0.0116 lbs |
| NOTES: lb= pounds. mg/L= milligrams per liter. *= design storm does not drain to conveyance system | | | |

The results show that since the infiltration basin was sized to infiltrate the entire Tier II design storm specified in the Tier II Checklist, there will be zero mass of zinc and lead discharged from Monitoring Location 001 during the design storm. This is below the mass-equivalent benchmarks for zinc and lead; therefor Monitoring Location 001 is eligible for a volume-reduction Tier II waiver. Infiltration will also eliminate discharges of stormwater with elevated pH from Monitoring Location 001 during the Tier II design storm.

## 1.4   Estimated Costs

Kinder Morgan will share the cost of the proposed treatment and infiltration measures with the Port. Kinder Morgan will cover the cost of downspout filters for the soda ash storage building, estimated to be $8,610 if pre-fabricated filters are purchased from a vendor. The Port will cover the cost of the warehouse downspout filters, because the Port operates the warehouse.

The Port has not yet estimated the cost to install the proposed infiltration measures.

## 1.5  Proposed Tier II Measure Components and Operation Plan

### 1.5.1 Proposed Treatment Measures

Stormwater from the southern half of the soda ash building and warehouse rooftops will be routed through existing downspouts into seven biochar downspout filters. The effluent from the filters will discharge from the bottom of the filters onto the pavement and flow to the existing catch basins. This runoff will then be routed through the existing pH adjustment system and Discharge Point 002.

The north soda ash building downspouts discharge to the gravel/railroad ballast area north of the building and infiltrates; therefore treatment is not proposed for this side of the building. Each southern soda ash building downspout filter will treat roof runoff from two downspouts located on the southern side of the building. The downspouts will be connected prior to discharging into the filter.

The warehouse building includes five downspouts on each side of the building. The center downspout on each side will be eliminated and a filter will be installed at each corner of the building. Each corner downspout will be connected to the downspout adjacent to it so each filter will treat runoff from approximately a quarter of the building (two downspouts).

### 1.5.2 Proposed Infiltration Measures

Stormwater from Basin M will continue to be collected into existing catch basins and will be routed through a proposed flow-control manhole that will route design flows into a proposed pump station. The pump station will pump stormwater to a pretreatment forebay that will settle out coarse solids prior to discharging to an infiltration basin, where the stormwater will infiltrate through engineered soil media (ESM).

The Basin M infiltration system consists of the following components:

- **Flow-Control Manhole:** The flow-control manhole will route design flows to the pump station and flows in excess of the design capacity to Discharge Point 001.

- **Pump Station.** The pump station will consist of a precast concrete wet well with two pumps and a valve vault designed to pump stormwater into the forebay.

- **Pretreatment Forebay.** The pretreatment forebay will provide energy dissipation and settling to remove coarse particulates before the stormwater discharges into the infiltration basin. The forebay volume will be equal to approximately 50 percent of the proposed infiltration basin.

- **Infiltration Basin.** The infiltration basin will consist of ESM and plants that will filter metals, as well as polycyclic aromatic hydrocarbons, and other pollutants prior to discharging to subsurface soils and groundwater.

## 1.6  Proposed Treatment System Design

The proposed treatment and infiltration measures were designed consistent with the DEQ Tier II Revised SWPCP Checklist and the City of Portland Stormwater Management Manual (PSWMM), as outlined in the following sections.

### 1.6.1 Design Storm[1]

Consistent with the DEQ Tier II SWPCP Checklist, the proposed stormwater treatment and infiltration facilities were sized to treat/infiltrate runoff generated by the Tier II design storm equivalent to 50 percent of the 2-year, 24-hour storm, as defined by the National Oceanic and Atmospheric Administration Atlas 2.[2] The 2-year, 24-hour storm at the site is 2.17 inches. The water quality design storm used in the hydrologic calculations is 1.08 inches in 24 hours.

### 1.6.2 Downspout Filter Design

The downspout filters will include 18 inches (minimum) of StormwaterBIOCHAR BiocharPEAT™ filtration media[3], a layer of sand, zeolite or other media to remove solids, a layer of pea gravel or alternative surface layer that will dissipate flow energy, and an underdrain system to collect the filtered stormwater. The filters will be housed in a 275-gallon (minimum) polyethylene tote. The following graphic shows an example of a biochar downspout filter. Modifications to this design may be implemented by the filter supplier or by Kinder Morgan and Port staff if filters are built on site. The biochar depth may exceed 18 inches for increased zinc reduction. Zeolite would provide solids reduction, as well as ion exchange for dissolved metals reduction.

---

[1] The DEQ Tier II SWPCP Checklist requires that Tier II facilities in Oregon Region 2 be designed to treat 50 percent of the 2-year, 24-hour storm event.
[2] NOAA Atlas 2 website: http://www.nws.noaa.gov/ohd/hdsc/noaaatlas2.htm
[3] Zinc removal efficiencies presented in this Tier II Report are based BiocharPEAT removal rates, Kinder Morgan and/or the Port may utilize a different biochar mixture, if similar zinc removal efficiencies are demonstrated.



BIOCHAR DOWNSPOUT FILTER

### 1.6.2.1    Drainage Area and Hydrologic Curve Numbers

Basin L was calculated using a scaled Autodesk® Civil 3D® site plan and stormwater system information provided by Kinder Morgan. Each of the soda ash building downspouts will treat approximately 392 square feet of roof. Each of the warehouse downspout filters will treat approximately 470 square feet of roof. A hydrologic curve number of 98 was used to model the roof surfaces.

### 1.6.2.2    Design Flow

HydroCAD® software was used to develop a hydrologic model utilizing the Santa Barbara Urban Hydrograph method and a Type IA, 24-hour storm to estimate the peak flow rate generated by the Tier II design storm. The HydroCAD model output report is included in Appendix D. The minimum treatment flow rate for each soda ash building downspout filter is 12 gallons per minute (gpm). The minimum treatment flow rate for each warehouse downspout filter is 15 gpm. Each of the proposed downspout filters will treat 15 gpm.

## 1.6.3 Infiltration Design

The infiltration facility will consist of ESM that consists of 70 percent sand, 20 percent coconut coir pith, and 10 percent granular activated carbon (GAC). This mixture was selected to reduce pollutant concentrations prior to discharging to the subsurface soils and groundwater. The ESM layer will be a minimum of 20 inches thick. The proposed infiltration basin is 30 feet by 30 feet, 3:1 side slopes, with two feet of freeboard, and a capacity of 18,000 gallons. Depth to groundwater is approximately 21 feet according to monitoring well installation logs in the vicinity of the proposed location. Actual

groundwater depth will be investigated during the design phase of this project. The infiltration basin will be located southeast of the Kinder Morgan leasehold, within the Port's Basin K. The Port will design the basin consistent with the PSWMM.

The following graphic depicts a preliminary cross-section of the infiltration basin.



## 1.6.4 Drainage Area

Kinder Morgan's Basin M was modeled by the Port's design engineer as Basin K1 in the SWMM (see Appendix C). The infiltration basin will infiltrate runoff from approximately 1.24 acres (Basin K), which was modeled as impervious (pavement and compacted gravel).

## 1.6.5 Design Flow and Basin Sizing

The Port sized the infiltration basin using SWMM and a design ESM infiltration rate of 20 inches per hour. The SWMM output report is included in Appendix C.

## 1.7  Implementation Schedule

The design, permitting, and implementation of the proposed Tier II corrective action will be completed consistent with the Permit Schedule A.11 (operational by June 30, 2021).

## 1.8  Operation and Maintenance Schedule

Downspout filters will be inspected by Kinder Morgan monthly to ensure that the filters are functioning properly and to evaluate the need for maintenance. Once per year, Kinder Morgan will collect samples of filtered stormwater from a representative downspout filter (one from each building) to determine whether the media requires replacement. On average, biochar filtration media is anticipated to require replacement once every three years.

Kinder Morgan will inspect the infiltration basin monthly to ensure that it is functioning properly and to evaluate the need for maintenance. The Port will be responsible for the infiltration basin maintenance. The maintenance tasks and schedule provided by the Port is summarized below:

- Keeping the inlet free of obstructions.

- Removing trash and debris to maintain filter bed permeability.

- Landscape maintenance and care of vegetation, potentially including regular irrigation during summer months.

- Inspecting, testing, and servicing pumps.

- Inspection and maintenance of flow-control manhole.

- Structural repairs to the infiltration basin and associated structures as needed.

- Replacement of ESM at the end of its useful life, based on water quality and flow monitoring data. The estimated replacement interval is every 15 years.

# MAUL FOSTER & ALONGI, INC., LIMITATIONS

The services undertaken in completing this report were performed consistent with generally accepted professional consulting principles and practices. No other warranty, express or implied, is made. These services were performed consistent with our agreement with our client. This report is solely for the use and information of our client unless otherwise noted. Any reliance on this report by a third party is at such party's sole risk.

Opinions and recommendations contained in this report apply to conditions existing when services were performed and are intended only for the client, purposes, locations, time frames, and project parameters indicated. We are not responsible for the impacts of any changes in environmental standards, practices, or regulations subsequent to performance of services. We do not warrant the accuracy of information supplied by others, or the use of segregated portions of this report.

FIGURE



PROPOSED DOWNSPOUT FILTER

WAREHOUSE

RD

RD

RD

RD

SODA ASH BUILDING

RD

RD

RD

BASIN L

PH ADJUSTMENT SYSTEM

MONITORING LOCATION 002

DISCHARGE POINT 002

BASIN M

PORT BASIN K

PROPOSED PORT INFILTRATION BASIN

PROPOSED VALVE BOX

PROPOSED PUMP STATION

DISCHARGE POINT 001

PROPOSED FLOW CONTROL MANHOLE AND MONITORING LOCATION 001

LEGEND

— KINDER MORGAN LEASE BOUNDARY

— DRAINAGE BASIN BOUNDARY

— PROPOSED STORM LINE

— EXISTING STORM LINE

Ⓓ   PROPOSED MANHOLE OR PUMP STATION

▦   EXISTING CATCH BASIN

RD   PROPOSED DOWNSPOUT FILTER

GRAVEL



**KINDER MORGAN**

0    100'    200'

NOTE: BAR IS ONE INCH ON ORIGINAL
DRAWING. IF NOT ONE INCH ON THIS
SHEET, ADJUST SCALE ACCORDINGLY.

**Figure**
**Proposed Tier II Measures**
Kinder Morgan
Portland, Oregon



MAUL FOSTER ALONGI
971.544.2139 | www.maulfoster.com

THIS FIGURE PREPARED AS SUPPLEMENTAL VISUAL INFORMATION ONLY AND
SHOULD NOT BE USED FOR CONSTRUCTION PURPOSES. ONLY PLAN SHEETS
APPROVED, STAMPED AND SIGNED BY A REGISTERED PROFESSIONAL ENGINEER IN
THE STATE OF GOVERNING JURISDICTION SHALL BE USED FOR CONSTRUCTION.
ADDITIONALLY, ONLY PLANS APPROVED BY THE APPLICABLE GOVERNING
JURISDICTIONS SHALL BE USED FOR FINAL CONSTRUCTION UNLESS OTHERWISE
EXPRESSLY NOTED IN WRITING BY THE ENGINEER OF RECORD.

# APPENDIX A
## BIOCHAR INFORMATION







FLOW TYPE: *Passive*

Pure Rain™ **PASSIVE** Stormwater Treatment Box contains either Biochar**BASIC**™ or Biochar**PEAT**™ Stormwater Filter Medias to capture these unwanted metals and other pollutants. Pure Rain™ **PASSIVE** is designed to be a low cost, good life span filter media for reducing copper, zinc and TSS along with other pollutants from stormwater.

Pure Rain™ **PASSIVE** Stormwater Treatment Box standard sizes are 240-gallon, 275-gallon or 405-gallon tote but other shapes and sizes are available depending on your needs.

As a standard it's an open top which makes it easy to visually inspect and remove any sediment or debris.  This unit will easily support a downspout of 5,000 - 10,000 sf roof drainage area for most rain events.   With the nonwoven barriers alternating back and forth, you get additional contact time without adding to the footprint of the treatment box.   This is also an easy DYI system.

Pure Rain™ **PASSIVE** Options:
- Most Common Size is **405 Gallon Tote**
- Choice of media:
    Biochar**BASIC**™   (MSRP $2800. each)
    Biochar**PEAT**™   (MSRP $3200. each)
- Other sizes and shapes available
    (Bulk Discounts & DIY Pricing Available)



Stormwater**BIOCHAR**.com

 **FREE** SITE VISITS SEE HOW WE CAN **HELP**

 **EMAIL US** INFO@stormwaterbiochar.com

 **CALL US** 503-789-6760

 **AMERICAN** MADE

## Design Conductivity Rate

**BIOCHAR FILTRATION RATE (275-GAL TOTE)**        **108 in/hr**

Tote Width (ft) = 3.3 Tote Length (ft) = 4.0 Media Conductivity
(in/min) = 1.8        Filtration Rate (gpm) = 15.0

 | **FIELD** ANALYSIS
Treatment Systems

| Date of Test | Pollutant Tested | PRE Treatment | Unit of Measure | POST Treatment | Unit of Measure | % Change | Amount of Media | 24 hr. Rain Event at Test |
|---|---|---|---|---|---|---|---|---|
| 3/22/18 | Copper | 21.4 | µg/L | ND | µg/L | 100% | 1 CY | 0.3" |
| 3/22/18 | Iron | 96.9 | µg/L | ND | µg/L | 100% | 1 CY | 0.3" |
| 3/22/18 | Zinc | 29.5 | µg/L | ND | µg/L | 100% | 1 CY | 0.3" |
| 3/8/18 | Copper | 2260 | µg/L | 311 | µg/L | 86% | 1 CY | 0.4" |
| 3/8/18 | Iron | 16100 | µg/L | 3280 | µg/L | 80% | 1 CY | 0.4" |
| 3/8/18 | Lead | 2.88 | µg/L | 2.16 | µg/L | 25% | 1 CY | 0.4" |
| 3/8/18 | Zinc | 314 | µg/L | 236.0 | µg/L | 25% | 1 CY | 0.4" |
| 3/22/18 | Copper | 13400 | µg/L | 14.5 | µg/L | 99.9% | 1 CY | 0.3" |
| 3/22/18 | Iron | 152000 | µg/L | 251 | µg/L | 99.8% | 1 CY | 0.3" |
| 3/22/18 | Lead | 18.4 | µg/L | 0.207 | µg/L | 99% | 1 CY | 0.3" |
| 3/22/18 | Zinc | 2120 | µg/L | 9.9 | µg/L | 99.5% | 1 CY | 0.3" |



275 Gallon    50 Gallon    405 Gallon

Transportation Company / Roadway & RR Runoff / Passive Box
**Pure Rain**™ Filtration System | Flow Type *Passive*

**After More Than 80,000 Gallons through 2/3 Cubic Yards of Biochar PEAT™**

| • **Copper** | **28.3%** | Pre: 12 µg/L   Post: 8.6 µg/L |
|---|---|---|
| • **Zinc** | **85.9%** | Pre: 370 µg/L   Post: 52 µg/L |
| • **Turbidity** | **50%** | Pre: .02 NTU   Post: .01 NTU |
| • **#2 Diesel** | **48.4%** | Pre: 3.1 mg/L   Post: 1.6 mg/L |
| • **Motor Oil** | **50%** | Pre: 4.4 mg/L   Post: 2.2 mg/L |



**STORMWATER TREATMENT**

StormwaterBIOCHAR.com

**MEDIAS:**



Biochar BASIC
Stormwater Treatment Filtration Media

Biochar PEAT
Stormwater Treatment Filtration Media

**SYSTEMS:**



Pure Rain™
STORMWATER TREATMENT

FILTER SOCKS

STORMWATER TREATMENT
CATCH BASIN Inserts

Pure Rain™
STORMWATER TREATMENT
FILTRATION SYSTEMS

Stormwater **BIOCHAR** LLC

**PHONE**
(503) 789-6760

**EMAIL**
info@StormwaterBIOCHAR.com

THE RIGHT **BIOCHAR**,
THE RIGHT **BLEND**, DIALED IN

 | **AMERICAN** MADE

# STORMWATER TREATMENT **FILTRATION MEDIA**

# Biochar**PEAT**™

Biochar**PEAT**™ Stormwater Treatment Media is a blend of StormwaterBIOCHAR™, StormwaterPEAT™ and StormwaterSHALE™. Biochar**PEAT**™ is designed to be an affordable, natural solution that is highly adaptable to how it's deployed to fit each site uniquely.

StormwaterBIOCHAR™ has shown to adsorb both organic pollutants and heavy/trace metals within its porous structure. In addition, the presence of oxygen rich organic compounds on the StormwaterBIOCHAR™ surfaces adds substantial cation exchange capacity which aids in the capturing of trace contaminants such as Zinc, Copper and Lead.

StormwaterPEAT™ is an organic that is rich in fulvic and humic acid, making it a natural toxin and heavy metal binder including Lead, Cadmium, Chromium, Manganese, Nickel and Cobalt.

StormwaterSHALE™ is an activated ceramic filtering media is the environmentally friendly option for cleaning water and stormwater. Removes TSS, Metals, Phosphorus, Arsenic, Grease, & Oils.

**The Right Biochar, The Right Blend, Dialed In.**

Biochar**PEAT**™ Performance:
- Can Remove Phosphorus, Metals, Arsenic, Grease, Oils, Toxins
- Removes TSS and suspended solids
- Hydraulic conductivity, allows fast, free drainage
- Employs ion exchange to enhance treatment process
- All Organic Ingredients

Biochar**PEAT**™ Available in:
- Bulk Super Sack (One Cubic Yard)
- Bulk one and a half cubic foot bags
- Pure Rain™ Filtration Bags
- Stormwater Catch Basin Inserts
- Pure Rain™ Filtration Systems

# Stormwater**BIOCHAR**.com

 **FREE** SITE VISITS SEE HOW WE CAN **HELP**     **EMAIL US** INFO@stormwaterbiochar.com     **CALL US** 503-789-6760     **AMERICAN** MADE

 

# FIELD ANALYSIS
## BiocharPEAT™

## STORMWATER TREATMENT

Steel Fabricator / Roadway & Roof Runoff / DIY Baffle Box | **Pure Rain**™ System Flow Type *Max*

- **Cadmium**  Pre: **0.55 µg/L**  Post: **ND  99.8%**
- **Chromium**  Pre: **3.5 µg/L**  Post: **1.1 µg/L  69.%**
- **Copper**  Pre: **16.2 µg/L**  Post: **7.91 µg/L  51%**  |  Pre: **14 µg/L**  Post: **3.3 µg/L  76%**
- **Iron**  Pre: **3.5 µg/L**  Post: **1.1 µg/L  54%**
- **Lead**  Pre: **22.3 µg/L**  Post: **7.34 µg/L  67%**  |  Pre: **17 µg/L**  Post: **0.5 µg/L  97%**
- **Nickel**  Pre: **3.1 µg/L**  Post: **2.4 µg/L  23%**
- **Zinc**  Pre: **8780 µg/L**  Post: **263 µg/L  97%**  |  Pre: **5700 µg/L**  Post: **16 µg/L  99.7%**

 THE **RIGHT** BIOCHAR
THE **RIGHT** BLEND, DIALED IN

 **FREE** SITE VISITS
SEE HOW WE CAN **HELP**

## SYSTEMS:

   



 **EMAIL US**
INFO@stormwaterbiochar.com

 **CALL US**
503-789-6760

**AMERICAN** MADE

Attachment B



**Columbia Riverkeeper**
407 Portway Ave, Suite 301
Hood River, OR 97031
**541.387.3030**
**www.columbiariverkeeper.org**

September 24, 2020

Citizen Suit Coordinator
Environment and Natural Resources Division
Law and Policy Section
P.O. Box 7415
Ben Franklin Station
Washington, D.C. 20044-7415

Re:     *Northwest Environmental Defense Center v. Kinder Morgan Bulk Terminals LLC*
        U.S. District Court for the District of Oregon, Case No. 3:20-cv-00706-HZ

To Whom It May Concern:

The parties to the above-referenced case have signed and asked the U.S. District Court for the District of Oregon to enter a consent decree settling the case. The consent decree includes at least one supplemental environmental project ("SEP") payment to Columbia Riverkeeper ("Riverkeeper"). Riverkeeper's mission is to protect and restore the water quality of the Columbia River and all life connected to it, from the headwaters to the Pacific Ocean. To achieve these objectives, Riverkeeper operates scientific, educational, and legal projects and programs to protect water quality, fish and wildlife habitat, and human health throughout the Columbia River Basin. Riverkeeper's projects include clean-water policy advocacy, environmental education, and water quality monitoring. For 20 years, Riverkeeper has successfully advocated for policies that protect and improve water quality in the Columbia River.

The alleged Clean Water Act violations at issue in the case have geographical and other nexuses to the Columbia River because the facility at issue is in Portland, Oregon, and it discharges stormwater associated with industrial activity to the Willamette River approximately five miles from its confluence with the Columbia River. SEP payments to Riverkeeper required by the consent decree will therefore benefit water quality and aquatic species in the Columbia River and its tributaries.

I am authorized by Columbia Riverkeeper to make the following commitments and I am writing this letter to confirm that:

1. I have read the proposed consent decree and I understand that Riverkeeper will receive funds from Kinder Morgan Bulk Terminals LLC as specified in the consent decree

(hereafter "the SEP funds").

2. Riverkeeper will spend the SEP funds for the purposes specified in the consent decree. In particular, Riverkeeper will use the funds for projects that protect and improve water quality, including for Riverkeeper's stormwater and water quality work on the Columbia River. Riverkeeper will not use the money to pay for litigation costs or outside counsel attorney fees.

3. Riverkeeper is a 501(c)(3) tax-exempt organization.

4. Riverkeeper will not use the SEP funds for lobbying purposes.

5. After the project or projects are completed, Riverkeeper will submit to the Court, the United States, and the parties a letter describing how the SEP funds were spent.

As noted above, Riverkeeper intends to use the funds for the purposes specified in the consent decree, which will advance Riverkeeper's mission and reduce pollution in the Columbia River.

Sincerely,

Lauren Goldberg

Lauren R. Goldberg
Legal and Program Director